UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARK J. SCHWARTZ, | Case No. 2:13-CV-709 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| CLARK COUNTY, NEVADA, et al., | |
| Defendant(s). | |

Presently before the court is defendants Clark County's ("County") and Jacquelin R. Holloway's ("Holloway"; collectively "defendants") second motion for summary judgment. (ECF No. 71). Plaintiff Mark J. Schwartz ("plaintiff") filed a response (ECF No. 72), to which defendants replied (ECF No. 73).

**I.    Facts**

The instant actions involve allegations of wrongful termination pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). (ECF No. 2-2).

Plaintiff began working for County as an auditor on August 17, 1992. (ECF No. 71-1 at 12). In 2000, plaintiff was promoted to senior management analyst in the Clark Country Business License Department ("BL"). (ECF No. 71-1 at 13). In either 2007 or 2008, plaintiff received an ADA workplace accommodation to adjust the size of his workplace. (ECF No. 71-1 at 19). From 2005–09, plaintiff received regular, positive employment evaluations noting his "meritorious" and "exemplary" performance. (ECF No. 71-1 at 16–18).

In 2008, Clark County Human Resources ("HR") began to review whether the job title, management analyst, was an appropriate classification and conducted a county-wide "management

analyst study" in which plaintiff participated and completed a "job description questionnaire." (ECF No. 71-1 at 20, 45). Subsequently, in August 2009, HR recommended seventeen (17) possible job title changes for forty-four (44) employees recognized as management analysts. (ECF No. 71-1 at 45–46). Pursuant to the management analyst study, three of the five management analysts at BL, excluding plaintiff, received new job titles. (ECF No. 71-1 at 38–39).

In February 2010, the county manager sent Holloway, director of business licensing for Clark County, a "mandate" that instructed her "to do a reduction in force" by dismissing employees to decrease BL's budget by 8 percent. (ECF No. 71-1 at 40). To comply with the budget reduction, Holloway determined that "between 8 to 12" employees would be dismissed, including

> a manager of finance, a senior management analyst, a management analyst, a business license agent, an office supervisor, [an] office assistant and an IT . . . support person . . . . [b]ased on [BL's] needs and functions in the department and also functions and duties that could be absorbed by others.

(ECF No. 71-1 at 41–42).

Because his job title had not been changed subsequent to the management analyst study, plaintiff was notified on June 18, 2010, that he would be dismissed as senior management analyst on July 6, 2010. (ECF No. 71-1 at 20). As a member of a union, SEIU Local 1107, which had made a collective bargaining agreement with County, plaintiff appealed his dismissal pursuant to the process provided under the terms of the agreement. (ECF No. 71-1 at 15, 23). Upon reviewing plaintiff's "statements and documents and other information," the layoff review committee affirmed plaintiff's layoff. (ECF No. 71-1 at 24).

Subsequently, plaintiff filed the underlying complaint alleging three causes of action: (1) violation of the ADEA; (2) violation of the ADA; and (3) violation of civil rights under § 1983. (ECF No. 2-2). The court granted defendants' motion for summary judgment (ECF No. 22), finding, *inter alia*, that plaintiff failed to raise a genuine dispute of material fact as to whether his termination was motivated by his disability or his age, rather than by legitimate budgetary concerns. (ECF No. 43).

Plaintiff appealed (ECF No. 46), and the Ninth Circuit reversed and remanded on May 27, 2016 (ECF No. 58). The Ninth Circuit determined that plaintiff raised a genuine dispute of material fact as to whether his selection for layoff was pretext for unlawful discrimination and that

the evidence supporting plaintiff's ADA and ADEA claims raised a triable issue as to his § 1983 claim against defendant Holloway. (ECF No. 58).

In the instant motion, defendants move for summary judgment as to plaintiff's § 1983 claim against Holloway based on qualified immunity, arguing that she was "reasonably following the directive of her [m]anager to reduce her labor force in the BL department." (ECF No. 71 at 16).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving

party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

Defendants move for summary judgment based on qualified immunity grounds in the interest of Holloway. (ECF No. 71). In response, plaintiff argues that, pursuant to the Ninth Circuit's reversal and remand, the "case must be scheduled for a jury trial." (ECF No. 72 at 5). The court disagrees.

James C. Mahan
U.S. District Judge

- 4 -

When a plaintiff brings a claim under 42 U.S.C. § 1983, government officials[1] sued in their individual capacities may raise the affirmative defense of qualified immunity. *See, e.g., Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005); *Goodman v. Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1058 (D. Nev. 2013). Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Qualified immunity balances two important interest—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244. It allows for officials to make reasonable mistakes regarding the lawfulness of their conduct by excusing reasonable mistakes. *See id.* at 231.

Deciding whether an officer is entitled to qualified immunity is a two-prong inquiry. First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right. *Id.* at 232. Second, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

To overcome a claim of qualified immunity, the plaintiff bears the burden of proof on both points. *See Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th Cir. 2002).

On appeal, the Ninth Circuit determined that plaintiff "raised a genuine dispute of material fact as to whether his selection for a layoff was . . . unlawful" and that "evidence supporting [plaintiff's] ADA and ADEA claims also raises a triable issue." (ECF No. 58 at 2–4). Accordingly, because the Ninth Circuit determined that whether a constitutional right was violated is a triable issue, plaintiff satisfies the first qualified immunity prong.

---

[1] Directors working for Clark County are considered government officials within the scope of qualified immunity. *See Henry A. v. Willden*, 678 F.3d 991, 999 (9th Cir. 2012).

The second prong focuses on whether, at the time of the alleged violation, a reasonable officer would have known, based on "clearly established" authority, that the conduct at issue violated a constitutional right. *See, e.g.*, *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) ("For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—we ask whether its contours were sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (internal quotation marks and citations omitted)).

The second "clearly established" prong of the qualified immunity analysis involves the issue of "fair warning"—specifically, whether prior decisions gave reasonable warning that the conduct at issue violated a constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

The United States Supreme Court recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[T]he clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson*, 483 U.S. at 640).

In the Ninth Circuit, a court begins its inquiry of whether a right is clearly established by looking to binding precedent on the allegedly violated right. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). "While [w]e do not require a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Mattos*, 661 F.3d at 442 (internal quotation marks and citation omitted).

In response to defendants' second motion for summary judgement, plaintiff makes two arguments against Holloway's qualified immunity defense: (1) that the "Ninth Circuit specifically

found that issues of triable fact exist as to whether Ms. Holloway violated § 1983 . . . and the case must proceed to trial to have the facts determined by the trier of fact"; and (2) that "[m]atters that have been decided on appeal are beyond the jurisdiction of the lower court." (ECF No. 72 at 3–4).

Plaintiff's arguments, however, miss the point. Plaintiff cites to no cases that indicate whether his right was clearly established at the time of Holloway's alleged misconduct. (*See* ECF No. 72). The Ninth Circuit's memorandum does not address qualified immunity. Specifically, the memorandum does not discuss whether defendant's alleged constitutional violation was clearly established and thus has no impact as to whether summary judgment is appropriate based on qualified immunity.

Plaintiff fails to meet his burden of establishing a clearly established right at the time of Holloway's alleged misconduct by citing "existing precedent" that "places the statutory or constitutional question beyond debate." *Mattos*, 661 F.3d at 442 (internal quotation marks and citation omitted).

Accordingly, plaintiff fails to satisfy the two-prong inquiry to determine whether Holloway is not entitled to qualified immunity.

**IV.  Conclusion**

In sum, defendants' second motion for summary judgment as to Holloway's qualified immunity on plaintiff's §1983 claim is granted.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 71) be, and the same hereby is, GRANTED.

DATED June 20, 2017.

_____
UNITED STATES DISTRICT JUDGE